Henry LEADER and Freeda Leader, his wife, Respondents,

v.

Sam PENNELL, Appellant.

Henry LEADER and Freeda Leader, his wife, Appellants,

v.

Sam PENNELL and Hoyt McDaniel, Respondents.

Nos. 7204, 7205.

Springfield Court of Appeals.

Missouri.

Sept. 10, 1954.

Henson & Henson, Poplar Bluff, for Henry Leader and another.

Charles T. Bloodworth, Jr., O. A. Tedrick, Poplar Bluff, for Sam Pennell and another.

McDOWELL, Presiding Judge.

In this action plaintiffs seek to recover a balance alleged to be due on a promissory note with accrued interest and attorneys fee and a decree ordering the foreclosure of a chattel mortgage on personal property described therein, given to secure said note.

Defendant, Sam Pennell filed a separate answer denying any indebtedness on the note, pleading payment and asking that the note and chattel mortgage be cancelled.

Count II of the separate answer is in the nature of a counterclaim. It states that defendant purchased all of the personal property described in the chattel mortgage for $14,000; that $7,000 was paid in cash and a note secured by chattel mortgage described in plaintiffs' petition was executed for the balance of the purchase price; that defendant has over-paid the note in the sum of $1,500 and that plaintiffs took personal property sold defendants in the above transaction and converted the same to their use in the value of $562. Defendant asks judgment on the counterclaim for $2,062.

The cause was tried before the court and judgment rendered in favor of plaintiffs and against defendants on the petition for $5,000 principal on the note plus $352.35 interest, plus $535.23 attorney fees, making a total of $5,887.58.

It was further adjudged that the chattel mortgage given to secure the payment of the note be ordered foreclosed for the judgment amount heretofore found for plaintiffs, conditioned upon the failure of defendants or either of them to pay the judgment on the note.

The court found for defendant, Sam Pennell, on the counterclaim for the sum of $489 and that Sam Pennell has purchased the interest of his co-defendant in said personal property.

Defendant Sam Pennell appealed from the judgment rendered in favor of plaintiffs on the petition, which is case No. 7204.

Plaintiffs appealed from the judgment in favor of defendant on the counterclaim, which is case No. 7205.

By agreement the cases were consolidated.

The evidence shows that the note sued on was given by defendants as a part of the purchase price for plaintiffs' business, known as Chaonia Boat Landing in Wayne County, just across the Butler County line on Lake Wappapello.

Plaintiffs owned a ten year lease, secured from the government, in 1950, on real estate fronting on Lake Wappapello. They spent some $6,000 in modernizing the house on said land, digging a deep well, and placing the pump therein, painting it and building a dock landing. They owned considerable personal property used in connection with this business which is itemized in the bill of sale executed by plaintiffs to defendants in this transaction.

Some time in June, 1951, a contract of sale was entered into between plaintiffs and defendants wherein plaintiffs sold all of their interest in said business to defendants and agreed to transfer their interest in the lease, of 8½ years that still existed, to the defendants.

Plaintiffs' evidence shows that the purchase price for all of the property was to be $18,000; that on July 1, 1951, possession of this property was turned over to defendants who made two payments prior to the bill of sale of $500 each on the purchase price. The first $500 payment, dated August 1, 1951, is shown by defendants' exhibit (B), a receipt from plaintiffs. The second

$500 payment, made September 2, 1951, is shown in evidence by defendants' exhibit (C).

Plaintiffs' evidence is that $4,000 was to be paid for the improvements made by plaintiffs on the leased property which became a part of the real estate and the property of the government at the termination of the lease but the use thereof was transferred to defendants. Plaintiffs say that this $4,000 was not to be a part of the written bill of sale and that said $4,000 was paid by the two $500 payments above set out and by $3,000, a part of a $5,000 check paid plaintiffs by the wife of defendant, McDaniel, which was made September 11, 1951, and prior to the delivery of the bill of sale to defendants.

Plaintiffs say that defendant, Pennell, paid two $1,000 payments, which are shown by credits on the note sued on, one made October 9th, and the other December 14th, 1951; that these payments were made by check, the latter being dated November 24th.

The bill of sale, the note sued on and the chattel mortgage securing it, were dated September 1, 1951, but not delivered until after the $5,000 McDaniel check was paid September 11, 1951, marked plaintiffs' exhibit 3 and defendants' exhibit (D), and until after the $5,000.00 payment by Sam Pennell at the Bank of Poplar Bluff, September 12, 1951, which payments completed the $4,000 claimed by plaintiffs for the improvements and $7,000 payment on the $14,000 consideration in the bill of sale, leaving $7,000 due plaintiffs, which is the amount represented in the promissory note sued on and for which the chattel mortgage was given to secure it. The bill of sale is marked defendants' exhibit (A). Plaintiffs' exhibit 1, shown in the record is the promissory note sued on. Exhibit 2 is the chattel mortgage securing the note.

Plaintiffs state that Sam Pennell paid $5,000 September 12, 1951, in the Bank of Poplar Bluff and, at that time, the bill of sale, offered in evidence, was delivered to him, and, at that same time, plaintiff says that the $7,000 note sued on and the chattel mortgage were executed by defendants and delivered to plaintiffs and that the chattel mortgage was duly recorded. Plaintiffs testified that defendant, Pennell, refused to pay the interest due on the note and that McDaniel paid $95 interest which is credited on the back of the note.

Plaintiffs' testimony was corroborated by H. S. McDaniel, one of the defendants, who testified that the consideration to be paid for the property purchased from plaintiffs was $18,000. He stated that he authorized his wife to pay $5,000 by check, $3,000 of which was to apply on the $4,000, which plaintiffs were to receive for the improvements and the other $2,000, together with the $5,000 paid by Pennell, in the Bank of Poplar Bluff, constituted the $7,000 payment made on the personal property represented in the bill of sale, leaving a balance due at the time the note and mortgage were executed by defendants to plaintiffs of $7,000. He stated it was the purpose of defendants to pay for the property purchased out of the profits of the business.

McDaniel testified that when the matter of purchasing the Chaonia Boat Landing was first brought up by Pennell that he, Pennell, and witness Harris discussed going in together to buy it and that Pennell told them it took $18,000 to buy it. He testified that Harris later was left out and that he and Pennell made the purchase. He testified that Pennell approached him about beating plaintiffs out of the $4,000 and he refused to do so. He testified that the receipt given Pennell, by plaintiffs at the bank, September 12, 1951, had included in it $2,000 of the check paid by his wife to plaintiffs.

But Harris testified for plaintiffs that the agreed price as stated by defendant, Pennell, was $18,000.

William A. Settle testified that he is an attorney at law in Butler County; that he prepared the papers pertaining to the sale by plaintiffs to the defendants of the boat dock at Chaonia Landing, in 1951; that all of the parties discussed the matter with him together in his office, September 1, 1951, when the note, chattel mortgage and bill of sale in this suit were prepared. He stated

that Mr. Leader explained to him that defendants were to pay him $4,000 in cash and then he wanted to make them a bill of sale for $14,000. He said in the presence of defendants that that was their agreement. He said in their presence they were to pay $7,-000 cash and give him a note for $7,000, secured by a chattel mortgage on the property covered in the bill of sale and he had a list of the property that was to go in the bill of sale, which he gave to the witness for the purpose of preparing it; that there was a discussion as to how the note should be paid and that he prepared the same according to their instructions. He gave this answer: "A. Well, I told Henry to take the bill of sale and take his wife with him and go before a notary public and sign the bill of sale and have their acknowledgment taken. And I told him further, 'to now be sure to hold this bill of sale until the five hundred dollar payment, which was due September 1, I believe it was, is paid to you, and until the doctor pays you his five thousand and Sam pays his five thousand dollars. And I also gave him the note and deed of trust, and told him to have Dr. McDaniel and Mr. Pennell go before a notary public and sign them and have their acknowledgment taken and then when the payment was made for him to deliver the bill of sale to them and for them to deliver the note and bill of sale to them." He then stated he meant the chattel mortgage.

He testified that the payment endorsed on the back of the note the 9th day of October, 1951, for $1,000 was not made on that date but made later by him at his office. He stated that was the payment that was written in pencil. He testified that the parties came to his office together December 14, 1951, when another payment of $1,000 was made; that the payment was made in his presence by check, which is identified in evidence as defendants' exhibit (G). He stated that at the time the check was given it was endorsed on the back, Mrs. Leader took it to the bank and when she got back, he was directed to put the credit on the note and did; that this credit was made December 14, 1951. The witness stated he calculated the interest and found it to be $95; that a

discussion took place between McDaniel and Pennell and Dr. McDaniel paid it. The witness testified that after he placed the $95 credit on the note for interest due there, in the presence of the parties, including Sam Pennell, the balance of the note was stated by the witness and the amount due thereon, to-wit, $5,000 and accrued interest and that defendant, Sam Pennell, and all, agreed that that was correct; that it was also agreed that the December payment should be carried over until March of the next year.

On cross-examination he testified that plaintiff told him that McDaniel had promised to pay $4,000 in cash and that the bill of sale was to be for $14,000; that the reason for this was that under the lease with the government plaintiffs could not recover for the improvements put on the two-story dwelling, the digging of the new well and a number of other things that he could not put in the bill of sale. He stated he could not sell it like personal property.

Defendant, Sam Pennell, testified that the purchase price of all of the property was to be $14,000. He testified that possession of the property was turned over the first of July, and that the two $500 payments, made August 1st and September 2nd, were out of the profits of the business but were to be applied on the purchase price; that he executed, together with defendant, McDaniel, the note sued on and the chattel mortgage; that the bill of sale did not contain all of the property that was involved in the transaction. He said all of the property was to go. He testified that at the time he executed the $7,000 note, plaintiffs had told him that McDaniel had paid $5,000; that all of the note was not due; that there were credits to be placed upon it. He testified that he paid plaintiffs $2,000 outside of the bank in his car and $5,000 inside the bank September 12th, the date of the execution of the note, chattel mortgage and bill of sale and that plaintiffs gave him a receipt for $7,000.

He denied that $2,000 of this receipt was a part of the $5,000 paid by McDaniel and he denied that the two $500 payments plus $3,000 of the McDaniel check were to be

paid plaintiffs besides the $14,000 set out in the bill of sale. He did admit that one of the $500 payments was for interest to be paid to the government. He claims that the note was overpaid $1,500.

The evidence shows that defendant, McDaniel, sold his interest in the business involved to Sam Pennell; that at the time of suit he had no interest in the property, filed no answer and was in default.

Defendant Pennell, to support his counterclaim, which is on appeal here as case No. 7205, testified that the bill of sale, defendants' exhibit (A), covers the business equipment bought from plaintiffs; that plaintiffs took the following property conveyed by the bill of sale, to-wit: one metal boat, valued at $150; 25 gallons of paint, of the reasonable value of $8 per gallon or $200; 40 sheets of the value of $2.39 each; 2 anchors of the value of $2.50 each; 1 extension ladder at a value of $25 and an electric toaster valued at $21, and agreed to allow credit on the note for these amounts.

Plaintiffs denied this evidence and stated that at the time the boat was taken, plaintiffs conveyed to Pennell 73 cases of soda valued at $94.90; 4 boxes of spark plugs of the value of $20; 12 anchors of the value of $26.75; 9 motor props of the value of $19; 74 quarts of oil of the value of $18.50; 400 gallons of Propane gas of the value of $52; 2 boat paddles for $4; candy and stock of the value of $5.10 and 3 cartons of cigarettes of the value of $5.80, all of the total value of $307.25. Plaintiffs claim that defendants paid them the balance due in cash. Defendant denies this and says that all of the property on the premises was to go whether in the bill of sale or not.

■ This court will review de novo cases of this nature, and will defer to the trial court's finding where the evidence does not convince us that such findings are incorrect. Hastings v. Hudson, 359 Mo. 912, 224 S.W. 2d 945, 950.

In this opinion we will refer to appellant in case No. 7204 as defendant and to respondents as plaintiffs and in case No. 7205 to the appellants as plaintiffs and respondent as defendant.

In case No. 7204, under points and authorities, defendant complains that the trial court erred in refusing to admit relevant, competent and material evidence offered on the part of defendant when it refused to admit defendant's exhibit (J), an affidavit given by defendant, McDaniel, to defendant, Pennell, at the time of the dissolution of their partnership, which stated that he, McDaniel, had paid to plaintiffs the sum of $5,000 and which corroborated defendant's testimony.

■ No authorities are cited under this allegation of error and we are of the opinion that there is no merit in the contention. This testimony was not admissible even to impeach the testimony of witness, McDaniel. Under no stretch of the imagination would such testimony be admissible in chief. McDaniel was a defendant and they could not bolster up their case by showing an affidavit from one of the defendants.

Under allegation of error No. II, defendant complains that the trial court erred in admitting incompetent testimony on the part of plaintiffs concerning an oral agreement alleged to have been made prior to the execution of the note and mortgage sued on since all prior negotiations are merged into the written contract and the rights of the parties are determined by the terms thereof; that oral testimony cannot be introduced to vary the terms of a written contract.

To support this contention he cites J. B. Colt Co. v. Gregor, 328 Mo. 1216, 44 S.W.2d 2.

That case involves entirely different facts from those in the case at bar. There, the defendant signed a written order or contract for a carbide plant, which was complete on its face and agreed to execute his promissory note in payment therefor, due one year from the date of acceptance of the order without interest. It was provided in the contract that this written agreement between the purchaser and the company con-

stituted the complete agreement and that the representative of the company had made no statements, verbal or written, modifying the terms thereof. Fraud was not pleaded and the court held that parol evidence was inadmissible to vary, modify or contradict written contract showing on the face thereof that it included the entire agreement. How different in the case at bar. Here, defendant testified that the written bill of sale did not cover the whole agreement. He said that all of the personal property, including the lease and the improvements, was to go and that the written bill of sale did not cover all of the property involved in the transaction. The bill of sale does not cover all of the property admittedly involved in this transaction and every witness, excepting defendant, Pennell, testified that the consideration was $18,000. Plaintiff, Leader, and defendant, McDaniel, and the attorney, who prepared the papers, when all of the parties were present, and, under their instruction, testified there was to be paid $4,000.00 for improvements made on the real estate which would go to the government at the termination of the lease, the use of which defendants would have the benefit for the remaining 8½ years of such lease.

■ We think the evidence is conclusive almost in this case that the written bill of sale, relied upon by defendant herein, was never intended by the parties to cover all of the transactions and that the trial court's judgment was supported by the greater weight of the evidence in this case. Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 944, 26 A.L.R.2d 278.

Defendant cites Edwards v. Sittner, Mo. App., 213 S.W.2d 652.

This case was decided by our court. It involves a written contract entered into between the parties which, on its face, appeared to be full and complete in all its terms. We held that all prior or contemporaneous agreements are merged into integrated documents. That, undoubtedly, is the law but has no application under the facts in this case.

Defendant cites Nickerson v. Whalen, Mo.App., 253 S.W.2d 502.

■ This was an action to recover balance due on a written lease for a tractor. The defendant counterclaimed for breach of contract. The court held that where parties reduced their contract to writing and it was complete on its face, unless there be fraud, accident or mistake, no evidence in parol can be received to add to or subtract from its terms; that parol evidence of a collateral agreement to be admissible, must not interfere with the terms of the contract or add to its obligation. That is the law but has no application under the facts in this case.

The evidence in the case at bar for which the $4,000 was paid as claimed by plaintiffs does not interfere with the matters in the bill of sale nor add to its obligation. It concerns a subject matter not contained in the bill of sale and, as the evidence shows, was not intended to be a part of the written bill of sale.

We find against defendant under this allegation of error.

Allegation of error No. III is the same as raised in the allegations just passed upon.

Judgment of the trial court in case No. 7204 in favor of plaintiffs on the note and for the foreclosure of the chattel mortgage is affirmed.

The issues on the counterclaim raised in case No. 7205 were decided by the trial court in favor of defendant. The evidence offered on these issues is conflicting. Defendant testified that plaintiffs took property and converted it to their own use which they had sold defendant and which was covered in the bill of sale. The bill of sale, offered in evidence, corroborates defendant's contention.

■ Plaintiffs contend that they sold property to defendants, not covered by the bill of sale, and that the property, defendant contends they got, was paid for by this exchange of goods. Where the testimony as

to issues involved is conflicting the appellate court will defer to the finding of the trial court on the weight of the testimony. He saw the witnesses, their demeanor on the witness stand and was in a better position to judge of the weight and value that should be given to their testimony.

Section 512.160 RSMo 1949, V.A.M.S., provides:

"No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action."

Judgment in case No. 7205 in favor of defendant on the counterclaim is affirmed.

STONE, J., concurs.